GILBERT FRANK CORPORATION, Appellant, v FEDERAL IN-
SURANCE COMPANY, Respondent.

First Department, January 4, 1983

APPEARANCES OF COUNSEL

*Ira M. Myers* and *Andrew C. Jacobson* of counsel (*Weg Myers & Jacobson, P.C.,* attorneys), for appellant.

*Solomon M. Cheser* of counsel (*Tell, Cheser, Breitbart & Lefkowitz,* attorneys), for respondent.

### OPINION OF THE COURT

KASSAL, J.

Plaintiff appeals from an order granting defendant's motion to dismiss the complaint pursuant to CPLR 3211 (subd [a], par 5), as barred by the 12-month limitations period contained in the insurance policy issued by respondent. The central issue raised is the applicable period of time within which an action was to be brought and whether, under the facts and circumstances of this case, it may be found that the insurer waived the period of limitations.

The action was brought to recover for a burglary loss which occurred on March 29, 1979, at plaintiff's premises located at 610 Smith Street, Brooklyn, New York. At the

time, plaintiff was insured under a multiperil policy issued by defendant, which provided coverage for the period from April 7, 1978 to April 7, 1979. The policy, concededly affording burglary coverage, provided for the time to institute an action or proceeding as follows: "No suit, action or proceeding for the recovery of any claim under this insurance shall be sustainable in any court of law or equity *unless commenced within 12 months after discovery by the insured of the occurrence which gives rise to the claim.* Provided that if by the laws of the state within which this insurance is issued such limitation is invalid, then any such claim shall be void unless such action, suit or proceeding be commenced within the shortest limit of time permitted by the laws of such state." (Emphasis added.)

Following discovery of the loss, notice of claim was furnished to the insurer, whereupon an investigation was conducted by the carrier as to the extent of the loss. The insurer retained Edward R. Reilly & Co., Inc. to investigate the occurrence, who, in turn, retained an accounting firm to examine and audit plaintiff's books and records. Subsequent to expiration of the one-year period in the policy, extensive meetings and discussions were held between defendant's accountants and plaintiff's treasurer, assisted by the insured's former broker, Jacobs & Jacobs, Inc. Although the record does not reflect the extent of any such discussions during the one-year period after the loss, it appears that, from approximately March 30, 1980 until the middle of October of that year, there were meetings conducted by the accountants for the insurer to clarify the nature and extent of the claim, including a review of plaintiff's records to ascertain the full extent of the loss. This action was instituted January 19, 1981, by the service of a summons with notice. After defendant appeared, on February 24, 1981, a complaint was served to recover $150,000 in damages, whereupon, on March 12, 1981, the insurer moved to dismiss the action as barred by the 12-month period of limitations contained in the policy.

Special Term granted the motion, holding that the action was barred by the policy provision which limited the time within which a suit could be commenced. The court, consistent with established principles, found that the insurer

was not obligated to notify the insured that the period of limitations was about to or had expired. Likewise rejected was the insured's claim that the two-year period of limitations contained in the standard fire insurance policy with respect to a fire claim should be applicable with respect to other insured perils in a multiperil policy (Insurance Law, § 168, subd 5, as amd by L 1975, ch 560, § 1). In this respect, Special Term found dispositive our determination in *Bargaintown, D. C. v Bellefonte Ins. Co.* (78 AD2d 206, affd 54 NY2d 700) wherein we found that the statutorily mandated two-year limitations period for fire losses, contained in subdivision 5 of section 168 of the Insurance Law, did not preclude the inclusion in the policy of a shorter limitations period for nonfire losses. Thus, Special Term held our disposition in *Bargaintown,* which involved a water loss, dispositive here as to the propriety of the one-year period with respect to the burglary claim at issue in this case. In dismissing the complaint on the face of the pleading, the court rejected plaintiff's alternate claims of waiver and estoppel.

We disagree with Special Term and find the present record insufficient to resolve the factual issue bearing on the claim by the assured that the carrier waived or should be estopped to assert the 12-month period of limitations provided for in the policy. Waiver, it has been held, constitutes the intentional relinquishment of a known right, with full knowledge of the facts upon which the existence of the right depends (*S. & E. Motor Hire Corp. v New York Ind. Co.,* 255 NY 69). Thus, where an insurer, with knowledge of the breach of the policy, manifests an intention, express or implied, to surrender a right, by unequivocal action inconsistent with a forfeiture of the policy, it may be concluded that the insurer waived the ground for forfeiture (see 6 Couch, Insurance 2d, § 32:274). Similarly, the principle of equitable estoppel may apply to estop an insurer where, with knowledge of the facts, it acts in a manner inconsistent with a forfeiture. Thus, in *Rothschild v Title Guar. & Trust Co.* (204 NY 458, 464) the Court of Appeals observed: "When a party with full knowledge, or with sufficient notice of his rights and of all the material facts, freely does what amounts to a recognition or adoption of a

contract or transaction as existing, or acts in a manner inconsistent with its repudiation, and so as to affect or interfere with the relations and situation of the parties, he acquiesces in and assents to it and is equitably estopped from impeaching it, although it was originally void or voidable."

The alternate doctrines of waiver and estoppel have been held applicable in insurance cases to regulate the actions and relationship of an insurer with its insured and to avoid forfeitures, which are not favored in the law. The applicability of the principle, which is dependent in each case upon the facts and circumstances adduced, was succinctly set forth by the Court of Appeals in 1880, over a century ago, in *Titus v Glens Falls Ins. Co.* (81 NY 410, 419): "When there has been a breach of a condition contained in an insurance policy, the insurance company may or may not take advantage of such breach and claim a forfeiture. It may, consulting its own interests, choose to waive the forfeiture, and this it may do by express language to that effect, or by acts from which an intention to waive may be inferred, or from which a waiver follows as a legal result. A waiver cannot be inferred from its mere silence. It is not obliged to do or say anything to make the forfeiture effectual. It may wait until claim is made under the policy, and then, in denial thereof, or in defense of a suit commenced therefor, allege the forfeiture. But it may be asserted broadly that if, in any negotiations or transactions with the insured, after knowledge of the forfeiture, it recognizes the continued validity of the policy, or does acts based thereon, or requires the insured by virtue thereof to do some act or incur some trouble or expense, the forfeiture is as matter of law waived".

This principle has been adhered to in subsequent cases to preclude a carrier from declaring a forfeiture where the insurer acts in recognition of the validity of the insurance, with knowledge that there exists a ground to void the policy (*Weed v London & Lancashire Fire Ins. Co.*, 116 NY 106; *Roby v American Cent. Ins. Co.*, 120 NY 510; *Gibson Elec. Co. v Liverpool & London & Globe Ins. Co.*, 159 NY 418, and cases cited therein). In *Pratt v Dwelling House Mut. Fire Ins. Co.* (130 NY 206) the court found error in the

direction of a judgment in favor of the insurer where, as here, with full knowledge of the facts pertaining to the loss, the carrier, inconsistent with its attempt to void the policy at trial, had caused the insured to fill out proofs of loss, to produce his books and to furnish information, which the insurer knew involved time, trouble and expense to obtain. The court found that the evidence permitted an inference that the carrier, with knowledge of the facts, had ratified the policy. Similarly, in *Ronald v Mutual Reserve Fund Life Assn.* (132 NY 378) wherein an action was brought on a life insurance policy, the court, although finding no basis for waiver or estoppel, nevertheless recognized that a waiver may arise "from negotiations or transactions with the insured, after knowledge of the forfeiture, by which the insurer recognizes the continued validity of the policy, or does acts based thereon, or requires the insured by virtue thereof to do some act or incur some expense or trouble." (132 NY, at p 384.)

In the context of the foregoing principle, since waiver and estoppel ordinarily involve questions of fact, we cannot agree with Special Term that, as a matter of law, an insurance carrier who, over an extended period of time, undertakes lengthy and protracted negotiations with its assured and investigates his books and records to fix the amount of the loss, cannot be held to have waived the time limitation contained in the policy. The record reflects an ongoing negotiation and examination of the insured's books and records, for the most part, all held after the one-year period had elapsed. Had the insurer intended at the time to rely upon the limiting language contained in the policy, restricting the insured to an action or proceeding commenced within 12 months after discovery of the loss, plainly, there was no useful purpose to be served in putting the assured to the trouble and expense of gathering and producing its books of account and inventory records to ascertain the value of the property which had been stolen.

We disagree with the suggestion by respondent that a waiver or estoppel may be found only with reference to acts or conduct during the one-year period for commencement of an action. Respondent mistakenly relies upon the authorities which have properly held that, to find a waiver or

estoppel, it must be demonstrated that the insured was misled or lulled into inactivity by the conduct of the insurer (*Fotochrome, Inc. v American Ins. Co.*, 26 AD2d 634, affd 23 NY2d 889; *Rosenthal v Reliance Ins. Co.*, 25 AD2d 860; cf. *Albino Linoleum & Carpet Serv. v Utica Fire Ins. Co.*, 33 AD2d 638). In those cases, the focus was upon the conduct of the insurer in relation to the inactivity of the insured during the one-year period within which the action should have been commenced. Thus, the court in each case was concerned with whether the insurance carrier had lulled the assured into inactivity so as to estop the insurer from relying upon the untimeliness of the action. Here, however, we are not as concerned with the insurer having lulled its insured into inactivity, as we are with the legal effect of its having embarked upon an apparent, deliberate course of conduct after the limitation period had elapsed, during which the carrier engaged in alleged substantial and protracted negotiations and a review of books and records of account to fix the nature and extent of the loss. There is no explanation offered as to the necessity for the discussions in light of the assertion now made that, at that time, no claim could have been made by or on behalf of the assured.

We are not concerned here with the situation which confronted the Court of Appeals in *Proc v Home Ins. Co.* (17 NY2d 239) where the court found the facts insufficient to support a claim of waiver or estoppel, concluding that the insured there had slept on his rights and had not been lulled by his insurer into a sense of false security. Unlike the cited cases, this action, at least on the face of the pleading, raises in issue whether the insurer, with knowledge of a defense sufficient to invalidate any claim made on the policy, acted in an inconsistent manner so as to ratify and recognize the continued validity of the claim, thereby equitably precluding the carrier from reliance upon the limitations period as a defense. The principle has been applied to avoid a forfeiture, where the policy is void or voidable and, we find, should be equally applicable on the issue of the availability to the insurer of the defense of Statute of Limitations (see *Syracuse Light. Co. v Maryland Cas. Co.*, 226 NY 25; *Graham Bros. Aktiebolag v St. Paul*

*Fire & Mar. Ins. Co.,* 127 Misc 403; *Norwood v Preferred Acc. Ins. Co. of N. Y.,* 56 Misc 529).

Thus, we conclude that the alternate issues of waiver estoppel or both raised herein by the insured in response to the claim by its insurer that the action was untimely commenced, present factual issues which cannot be disposed of summarily on this record. In so concluding, we are mindful of the fact that the motion here was made prior to answer and, accordingly, was addressed to the face of the pleading under CPLR 3211. Neither party has been put to its proof in response to a motion for summary judgment, whereupon the opposing party would be required to adduce evidentiary proof (CPLR 3212, subd [b]; *Zuckerman v City of New York,* 49 NY2d 557). We need not reach the issue raised by respondent that the accounting firm retained by it lacked apparent authority to bind the principal, an issue which is likewise of a factual nature, inappropriate for summary disposition (see *Aarons Fifth Ave. v Insurance Co. of North Amer.,* 52 AD2d 855).

Although not dispositive on the merits of the appeal, we note with some interest the apparent relationship between the delayed reliance by the insurer on the 12-month limitations period contained in the policy, with our disposition in *Bargaintown, D. C. v Bellefonte Ins. Co. (supra)* decided but a few months prior thereto. Here as in *Bargaintown,* the multiple peril policy provided for a one-year limitations period within which an action was to be commenced. The policy conflicted with the statutory requirement that a standard fire policy contain a two-year period of limitations (Insurance Law, § 168, subd 5). In *Bargaintown* however, we held (78 AD2d 206) and the Court of Appeals agreed (54 NY2d 700) that the parties could provide for a lesser period applicable to nonfire losses. Whether the parties in this case, in their negotiations and discussions conducted after expiration of the one-year period, proceeded on the same assumption as did the plaintiff in *Bargaintown,* i.e., that the two-year statutory period for fire claims would be applicable to all claims made on a policy which included fire insurance coverage, in addition to other covered perils, does not appear. Any such reliance might in part explain the protracted discussions and meet-

ings held to inquire into the extent of the loss during the more than six-month period after expiration of the contractual period of limitations. This is likewise of a factual nature and cannot be resolved on a motion to dismiss addressed to the face of the pleading. Here, the appropriate procedure to be followed requires the insurer to interpose its answer to the complaint, in which it may, if so advised, raise as a defense the period of limitations contained in the policy. The assured may then avail itself of the argument tendered here that the carrier waived or should be estopped to assert Statute of Limitations as a defense.

Accordingly, the order, Supreme Court, New York County, (M. GOLDMAN, J.), entered August 24, 1981, which granted defendant's motion to dismiss the complaint pursuant to CPLR 3211 (subd [a], par 5), should be reversed, on the law, with costs, the motion to dismiss denied, the complaint reinstated and defendant directed, within 30 days after service of the order herein, to serve its answer, with leave to interpose therein Statute of Limitations as a defense.

Ross, J. P., CARRO and BLOOM, JJ., concur.

Order, Supreme Court, New York County, entered on August 24, 1981, unanimously reversed, on the law, the motion to dismiss denied, the complaint reinstated and defendant directed, within 30 days after service of this court's order, to serve its answer, as indicated in the order of this court. Appellant shall recover of respondent $75 costs and disbursements of this appeal.